# State of Louisiana
# Secretary of State

03/13/2023

Legal Services Section
P.O. Box 94125, Baton Rouge, LA 70804-9125
(225) 922-0415

LINCOLN NATIONAL LIFE INSURANCE COMPANY
C/O CORPORATION SERVICE COMPANY
501 LOUISIANA AVENUE
BATON ROUGE, LA 70802-5921

Suit No.: 642280
1ST JUDICIAL DISTRICT COURT
CADDO PARISH

DIANTHA TRIPLET, ET AL
vs
LINCOLN NATIONAL LIFE INSURANCE COMPANY, ET AL

Dear Sir/Madam:

I am enclosing a citation served in regard to the above entitled proceeding. If you are not the intended recipient of this document, please return it to the above address with a letter of explanation. All other questions regarding this document should be addressed to the attorney that filed this proceeding.

Yours very truly,

R. KYLE ARDOIN
Secretary of State

Served on: R. KYLE ARDOIN
Served by: M. LOCKWOOD

Date: 03/10/2023
Title: DEPUTY SHERIFF

**No: 1276439**

KC

EXHIBIT

A

jillb CPCC.CV.4028700

# Citation

DIANTHA TRIPLET ETAL
VS
LINCOLN NATIONAL LIFE INSURANCE COMPANY

NO. 642280– A
STATE OF LOUISIANA
PARISH OF CADDO

FIRST JUDICIAL DISTRICT COURT

THE STATE OF LOUISIANA, TO: LINCOLN NATIONAL LIFE INSURANCE COMPANY
THRU HONORABLE SECRETARY OF STATE
BATON ROUGE, LA 70809

YOU HAVE BEEN SUED.
Attached to this Citation is a certified copy of the Petition.* The petition tells you what you are being sued for.

You must EITHER do what the petition asks, OR, within TWENTY-ONE (21) days after you have received these documents, you must file an answer or other legal pleadings in the Office of the Clerk of this Court at the Caddo Parish Court House, 501 Texas Street, Room 103, Shreveport, Louisiana.

If you do not do what the petition asks, or if you do not file an answer or legal pleading within TWENTY-ONE (21) days, a judgment may be entered against you. Please be aware of Act 174 of the 2021 regular session of the Louisiana Legislature which changed delays for answering. The full text of this bill can be found at https://legis.la.gov/legis/BillInfo.aspx?i=239989.

This Citation was issued by the Clerk of Court for Caddo Parish, on this date March 1, 2023.

*Also attached are the following:

MIKE SPENCE, CLERK OF COURT

By: Hannah Harper
Deputy Clerk

SERVED ON
R. KYLE ARDOIN
MAR 10 2023
SECRETARY OF STATE
COMMERCIAL DIVISION

G ADAM COSSEY
Attorney

A TRUE COPY - - ATTEST

Hannah Harper
Deputy Clerk

These documents mean you have been sued. Legal assistance is advisable, and you should contact a lawyer immediately. If you cannot find a lawyer, please go to www.shreveportbar.com and click on the Lawyer Referral Service link, or go to the Shreveport Bar Center on the third Monday of each month from 5:30 - 7:30 for a free seminar. If eligible, you may be entitled to legal assistance at no cost to you through Shreveport Bar Legal Aid. Please call 318-222-7186 for more information.

If you are a person with a disability, please contact the Clerk of Court's office for information regarding accommodation and assistance.

SERVICE COPY

STATE OF LOUISIANA * PARISH OF CADDO
FIRST JUDICIAL DISTRICT COURT

DIANTHA TRIPLET, Individually and as Administratrix of the Estate of William Triplet

FILED: ______________

VS. NO. 642,280-A

LINCOLN NATIONAL LIFE INSURANCE COMPANY

DY CLERK: ____________

PETITION FOR DAMAGES

NOW INTO COURT, through undesigned counsel, comes PLAINTIFF, DIANTHA TRIPLET, individually and as administratrix of the Estate of William Triplet, who for her petition, respectfully shows as follows:

PARTIES

1.

Plaintiff herein is DIANTHA TRIPLET ("Diantha" or "plaintiff"), a competent adult resident of Caddo Parish, Louisiana. Diantha is the widow of William Triplet ("William"), and is the duly named administratrix of his estate.

2.

Made defendant herein is LINCOLN NATIONAL LIFE INSURANCE COMPANY ("Lincoln" or "defendant"), a foreign insurer licensed to do and doing business in this parish and state, who may be served through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana 70809.

JURISDICTION & VENUE

3.

This is an action on a life insurance policy that was issued through plaintiff's employer, Christus Highland Medical Center ("Christus"), in Caddo Parish, Louisiana. Both the decedent, William Triplet, and the beneficiary, Diantha Triplet, are domiciliaries of Caddo Parish, Louisiana. Jurisdiction and venue are therefore proper pursuant to LSA-R.S. 22:8686 and La. C.C.P. art. 76.

#435

Hudson Potts



Caddo Parish
Filed Feb 22, 2023 8:44 AM
Sharon Newton
Deputy Clerk of Court
E-File Received Feb 21, 2023 3:51 PM

642280
A

## SUMMARY OF THE CASE

4.

This lawsuit seeks to recover benefits under an accidental death policy issued by Lincoln and insuring the life of Diantha's husband, William. After William tragically died of a head injury sustained in a car accident on January 1, 2022, Lincoln denied Diantha's claim for death benefits. Lincoln based its denial on the fact that William had preexisting cardiovascular disease and took a daily baby aspirin. It concluded that this condition and mediation must have necessarily contributed to the traumatic brain bleed sustained in the car crash, such that his death was not caused "solely" by the crash.

5.

The problem with Lincoln's denial is that it is in direct conflict with long-settled Louisiana law. Since at least 1947, the Louisiana Supreme Court has repeatedly held that "if the injury, by aggravating the disease, accelerated the death of the assured, then it resulted 'directly, independently and exclusively of all other causes" and coverage is afforded. *Lipscomb v. Eq. Life Assur. Soc. of U. S.*, 18 So. 2d 167, 172 (La. 1944). "The fact that the physical infirmity of the victim may be a necessary condition to the result does not deprive the injury of its distinction of the sole producing cause." *Id.* at 172. To that end, the Louisiana Supreme Court has repeatedly rejected the exact position taken by Lincoln in this case under identical policy provisions. *Id.*; *Thibodeaux v. P. Mut. Life Ins. Co.*, 112 So. 2d 423 (La. 1959) ("if the accident ...sets in motion or starts a latent or dormant disease, and such disease merely contributes to the death after being so precipitated by the accident, it is not a proximate cause of the death nor a contributing cause within the meaning of the terms of the policy"); *Moore v. The Prudential Insurance Company of America*, 278 So.2d 481 (La.1973) ("we reaffirm the rule of law applied in the *Thibodeaux* case"); *Martin v. Am. Benefit Life Ins. Co.*, 294 So. 2d 200 (La. 1974) (holding that an underlying disease does not preclude coverage if "it would not have brought about *this disability at this time*" without the trauma suffered in the accident).

6.

Louisiana's intermediate appellate courts have followed suit, repeatedly reaching the same conclusion. *Richard v. S. Farm Bureau Cas. Ins. Co.*, 128 So. 2d 806, 808 (La. App. 3d Cir. 1961) (holding that identical policy language did not preclude coverage when the insured suffered a heart attack from stress the day after a car accident); *DeCuir v. Old Republic Life Ins. Co.*, 342 So. 2d 705 (La. App. 3d Cir. 1977), *writ denied*, 344 So. 2d 670 (La. 1977) ("if death would not have occurred **when it did** but for the injury resulting from the accident, it was the direct, independent, and exclusive cause of death at that time, even though the death was hastened by the diseased condition" (emphasis added)).

7.

In light of the settled law, accidental death insurers in this state stopped denying coverage on this basis decades ago. For whatever reason, Lincoln chose to resurrect it in this case to deny benefits to William's widow, who had faithfully paid her policy premiums to Lincoln for years. Court intervention is therefore necessary to compel Lincoln to fulfill its obligations under the policy and compensate Diantha for the losses incurred as a result of Lincoln's bad faith, baseless denial.

## FACTUAL BACKGROUND

8.

Through her employer at Christus, Diantha obtained a life insurance and accident death policy through Lincoln. Premiums were deducted from her paycheck and paid to Lincoln each month for over thirteen years.

9.

At all times pertinent herein, the policies purchased by Diantha and insuring William's life were in full force and effect.

10.

On January 1, 2022, William was operating his 2014 Ford F-Series pickup truck on Interstate 30 in Little Rock, Arkansas, when he lost control of his vehicle, struck the guardrail, spun across another lane, and struck a concrete wall.

11.

During the crash, William suffered a major head injury. He had observable, traumatic injuries to the right side of his head and was immediately rendered unconscious by the impact. Paramedics noted that William had deformity, bruising, and drainage from the head and photographs showed blood and other cranial fluids coming from his right ear. When EMS arrived, William had a Glasgow Coma Scale score of three (the lowest possible score), which indicated he could not open his eyes, was nonverbal, and had no motor response.

12.

William was emergently taken to the University of Arkansas for Medical Sciences ("UAMS") hospital in Little Rock, where a level one trauma activation was called. William was met at the hospital by a team of trauma surgeons and trauma nurses. The UAMS physicians diagnosed him with a "**traumatic** subarachnoid hemorrhage," "**traumatic** cerebral edema," and "hydrocephalus" (bleeding and swelling in the brain). He underwent a "craniotomy for **trauma**" and a stent was placed to relieve the pressure on his brain. He was transferred to the ICU, but never regained consciousness. He was them moved to Arkansas Hospice and died from his injuries on January 5, 2022. William's medical records state that his primary diagnosis was an intraventricular hemorrhage caused by a closed head injury suffered in the crash.

13.

On April 20, 2022, the Arkansas Department of Health issued a death certificate stating that the manner of death was an "**accident**." The "cause of death" was identified as "cerebrovascular accident" and "motor vehicle accident." *See* Death Certificate attached as Exhibit A.

14.

The car crash was investigated by the Arkansas State Police, who found that William's condition was "normal" at the time of the crash and that the accident was caused by inattention. There is no evidence of any precipitating medical event that led to the car accident.

15.

After William's death, Diantha received a "Survivor Letter" from Lincoln stating that William was enrolled in the Spousal Life Insurance benefit and a Spousal Accidental Death and Dismemberment benefit was available. She proceed to file a claim for those benefits with Lincoln.

16.

On April 26, 2022, Diantha faxed the death certificate to Lincoln employee Erin Campbell. Shortly thereafter, Ms. Campbell called Diantha and advised "I am getting ready to issue a check for the benefits but need to get approval of my supervisor."

17.

Later that same day, Erin Campbell called Diantha back and said "I am sorry but we are going to need more records to review."

18.

Lincoln then requested toxicology results from UAMS. On May 3, 2022, Diantha faxed a letter from the emergency room physician at UAMS stating that no toxicological test was performed because there was no indication one was needed.

19.

On May 4, 2022, Diantha faxed all of the UAMS records to Ms. Campbell at Lincoln. At this time, Lincoln had more than sufficient proof that the proximate cause of William's death was the car crash. This was spelled out in the death certificate and medical records, which addressed the fact that a "traumatic" head injury – treated by trauma surgeons – led to his death.

20.

On June 3, 2022, a representative from Lincoln called Diantha and informed her by phone that Lincoln was denying the accidental death benefits "because of the medications" William was taking at the time of the accident.

21.

On June 6, 2022, Lincoln issued a letter (*See* Exhibit B) quoting language from a still unidentified policy that purportedly reads as follows: "No benefits are payable for any loss that is contributed to or caused by…disease, bodily or mental illness (or

medical or surgical treatment thereof)." The letter then stated that "the underlying medical condition requiring treatment of aspirin and clopidogrel were contributing factors to the death" and "therefore, the accident was not the sole reason of the death." *Id.*

22.

No policy of insurance was included with the June 2, 2022 letter received by Diantha.

23.

On June 22, 2022, in preparation for her appeal of the denial, Diantha requested a copy of the policy from the Christus human resources department. Diantha was sent an email with the policy. *See* Email attached as Exhibit C & Policy provided by Christus attached as Exhibit D. This policy did not include the language cited by Lincoln in the denial.

24.

Diantha filed a timely appeal of the decision.

25.

On September 23, 2022, Lincoln issued a second denial of the claim. *See* Letter attached as Exhibit E. This letter refers to policy language that neither Diantha nor Christus have ever seen. This is despite the fact that the letter's author, Lisa Macallister, states: "We confirmed the exclusion listed in the June 4, 2022 denial letter was cited from an accurate copy of the Christus Health Group Life Insurance Policy" and "A copy of the Policy is included with this letter for your consideration." *Id.*

26.

No copy of any policy was included with the letter, nor has Diantha ever received a copy. Therefore, both denials by Lincoln cited language from a policy that has never been reviewed or seen by Christus or Diantha.

27.

On January 6, 2023, Diantha called Lincoln in an effort to obtain the policy referenced in the two denial letters. She spoke with a Lincoln employee who told her

"You cannot obtain the policy unless you have filed a claim." This was despite the fact that Diantha had long-since filed her claim. When Diantha persisted, the Lincoln employee then told her that he could not provide one because it had already been emailed to her. Again, Diantha had never received a copy of the policy in any form (email or otherwise).

28.

Notwithstanding the fact that Lincoln repeatedly refused to provide a copy of the policy it cited, the exclusion it relied on – even if it exists – is facially inapplicable. As outlined above, Louisiana courts have routinely rejected this exact argument, based on identical policy language, for nearly eighty years. Put simply, "if death would not have occurred *when it did* but for the injury resulting from the accident, it was the direct, independent, and exclusive cause of death at that time, even though the death was hastened by the diseased condition" (emphasis added). *Lipscomb* at 172. "**The fact that the physical infirmity of the victim may be a necessary condition to the result does not deprive the injury of its distinction of the sole producing cause**" (emphasis added). *Id.*

29.

In the present case, it is beyond any reasonable dispute that the course of events that led to William's death were put in motion by the car crash. Therefore, regardless of any contributing physical conditions or medications, Diantha is entitled to accidental death benefits under settled Louisiana law. *Thibodeaux* at 427. Lincoln's refusal to pay those benefits constitutes a bad faith breach of the policy contract.

## REQUESTS FOR RELIEF

30.

Diantha shows that she is entitled to the following damages arising out of Lincoln's breach of the insurance policy contract:

(a) The full amount of all benefits due under the policy;

(b) Legal interest running from the date that proof of death was provided (April 26, 2022);[1]

[1] *See* LSA-R.S. 22:1811 & LSA-R.S. 22:1821.

(c) Attorney's fees;

(d) Court costs and litigation expenses; and

(e) All other damages proven at trial.

## JURY DEMAND

31.

Diantha demands and respectfully prays for trial by 12-person jury.

WHEREFORE, PLAINTIFF, DIANTHA TRIPLET, Individually and as Administratrix of the Estate of William Triplet, PRAYS that her petition be deemed good and sufficient, and that after all due delays and proceedings are had, that there be judgment herein, in her favor and against defendant, Lincoln National Life Insurance Company, for all benefits afforded under the policies at issue, for an award of additional damages, interest, attorneys' fees, and costs, and for all other relief to which she is entitled under the premises.

Respectfully submitted,

**HUDSON, POTTS & BERNSTEIN, L.L.P.**
1800 Hudson Lane, Suite 300 (71201)
Post Office Drawer 3008
Monroe, Louisiana 71210
Telephone: 318/388-4400; Facsimile:318/322-4194
Email: acossey@hpblaw.com

BY: ______________________________
G. ADAM COSSEY – Bar No. 31678
*Attorneys for Plaintiff*

***PLEASE SERVE:***

LINCOLN NATIONAL LIFE INSURANCE COMPANY
***Through its registered agent,***
**the Louisiana Secretary of State**
**8585 Archives Avenue**
**Baton Rouge, Louisiana 70809**

ENDORSED FILED
SHARON NEWTON, DEPUTY CLERK
FEB 2 2 2023
A TRUE COPY - ATTEST
CADDO PARISH DEPUTY CLERK

# STATE OF ARKANSAS

ARKANSAS DEPARTMENT OF HEALTH
Vital Records
CERTIFICATE OF DEATH

FILE NUMBER: 2022001524

1. DECEDENT'S LEGAL NAME: WILLIAM PAUL TRIPLET
2. SEX: MALE
3a. DATE OF DEATH: JAN 5, 2022
3b. TIME OF DEATH: 08:20 AM
4. SOCIAL SECURITY NO.: 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
5a. AGE - Last Birthday (Years): 75
5b. UNDER 1 YEAR: Months / Days
5c. UNDER 1 DAY: Hours / Minutes
6. DATE OF BIRTH: OCTOBER 21, 1946
7. BIRTHPLACE: BIENVILLE, LA
8a. RESIDENCE-STATE or FOREIGN COUNTRY: LOUISIANA
8b. COUNTY: CADDO
8c. CITY OR TOWN: KEITHVILLE
8d. NUMBER AND STREET: 6474 COLQUITT RD
8e. APT. NO.:
8f. ZIP CODE: 71047-7905
8g. INSIDE CITY LIMITS?: NO
9. EVER IN US ARMED FORCES?: YES
10. MARITAL STATUS AT TIME OF DEATH: MARRIED
11. SURVIVING SPOUSE'S NAME (If wife, give name prior to first marriage): DIANTHA DUNN
12a. IF DEATH OCCURRED IN A HOSPITAL:
12b. IF DEATH OCCURRED SOMEWHERE OTHER THAN A HOSPITAL: HOSPICE FACILITY
12c. COUNTY OF DEATH: PULASKI
12d. FACILITY NAME (If not institution, give number and street): ARKANSAS HOSPICE - ST VINCENT - LITTLE ROCK
12e. CITY OR TOWN: LITTLE ROCK
12f. ZIP CODE: 72205
13. FATHER'S NAME (First, Middle, Last): CHESTER DANIEL TRIPLET
14. MOTHER'S NAME PRIOR TO FIRST MARRIAGE (First, Middle, Last): ELAINE MAXINE GULLEY
15a. INFORMANT'S NAME: DIANTHA TRIPLET
15b. RELATIONSHIP TO DECEDENT: WIFE
15c. MAILING ADDRESS (Number and Street or PO Box, City, State, Zip Code): 6474 COLQUITT RD, KEITHVILLE, LA 71047-7905
16a. METHOD OF DISPOSITION: BURIAL; REMOVAL FROM STATE
16b. PLACE OF DISPOSITION: WALDROP CEMETERY
16c. LOCATION - CITY, TOWN, AND STATE: BECKVILLE, TEXAS
17a. EMBALMER'S NAME: RANDY C SHARPE
17b. EMBALMER'S LICENSE #: 2020
17c. SIGNATURE (FUNERAL SERVICE LICENSEE OR OTHER AGENT): /s/ RANDY C. SHARPE
17d. NAME AND COMPLETE ADDRESS OF FUNERAL FACILITY: HAWTHORN FUNERAL HOME, 307 W WELLINGTON, CARTHAGE, TX 75633
17e. LICENSE #: 10986
18a. DATE PRONOUNCED DEAD: JAN 5, 2022
18b. TIME PRONOUNCED DEAD: 08:20 AM
18c. NAME AND TITLE OF PERSON PRONOUNCING DEATH (PRINT / TYPE): HAZEL W MIDDLETON HOSPICE RN
19. WAS MEDICAL EXAMINER OR CORONER CONTACTED?: YES

CAUSE OF DEATH

20. PART I. Enter the chain of events - diseases, injuries, or complications - that directly caused the death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE. Enter only one cause on a line.

IMMEDIATE CAUSE (Final disease or condition resulting in death)
a. CEREBROVASCULAR ACCIDENT — Approximate interval onset to death: DAYS
Due to (or as a consequence of):
b. MOTOR VEHICLE ACCIDENT — DAYS
Due to (or as a consequence of):
c.
Due to (or as a consequence of):
d.

PART II. Enter other significant conditions contributing to death but not resulting in the underlying cause given in PART I: INTERVENTRICULAR HEMORRAGE AND MOTOR VEHICLE ACCIDENT 1/1/2022; HYPERTENSION; CORONARY ARTERY DISEASE; DIABETES; CLOSED HEAD INJURY; BLUNT CHEST TRAUMA

21a. WAS AN AUTOPSY PERFORMED?: NO
21b. WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE THE CAUSE OF DEATH?:
22. MANNER OF DEATH: ACCIDENT
23. DID TOBACCO USE CONTRIBUTE TO DEATH?: UNKNOWN
24. IF FEMALE:
25a. DATE OF INJURY (Mo/Day/Yr): 01/01/2022
25b. TIME OF INJURY: 04:00 AM
25c. PLACE OF INJURY (e.g. Decedent's home, construction site, restaurant, wooded area):
25d. INJURY AT WORK?: NO
25e. LOCATION OF INJURY (Number, Street, Apartment No., City, State, Zip Code):
25f. DESCRIBE HOW INJURY OCCURRED: INJURED IN HIGHWAY
25g. IF TRANSPORTATION INJURY, SPECIFY: DRIVER/OPERATOR
26a. CERTIFIER (Check only one): Hospice Registered Nurse - To the best of my knowledge, death occurred due to the cause(s) and manner stated.
SIGNATURE: /s/ SANDRA JEAN SMALLWOOD — TITLE: HOSPICE RN — DATE: JANUARY 05, 2022
26b. NAME AND COMPLETE MAILING ADDRESS OF PERSON SIGNING ITEM 26a: SANDRA JEAN SMALLWOOD, HOSPICE RN, 2 ST VINCENT CIRCLE, LITTLE ROCK, AR 72205
LICENSE #: R088364
27a. SIGNATURE OF REGISTRAR: [signature]
27b. (REGISTRAR ONLY) DATE FILED: JAN 19, 2022
DENOTES AMENDED ITEMS:

SEAL — ARKANSAS DEPARTMENT OF HEALTH — LITTLE ROCK, ARK.

THIS IS TO CERTIFY THAT THE ABOVE IS A TRUE AND CORRECT COPY OF THE CERTIFICATE ON FILE IN THE ARKANSAS DEPARTMENT OF HEALTH.

APR 2 0 2022

[signature] 7664188
Shirley Louie
State Registrar

WARNING: A REPRODUCTION OF THIS DOCUMENT RENDERS IT VOID AND INVALID. DO NOT ACCEPT UNLESS EMBOSSED SEAL OF THE ARKANSAS DEPARTMENT OF HEALTH IS PRESENT. IT IS ILLEGAL TO ALTER OR COUNTERFEIT THIS DOCUMENT.

Exhibit A

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER. THIS IS WATERMARKED PAPER. DO NOT ACCEPT WITHOUT FIRST HOLDING TO LIGHT TO VERIFY WATERMA

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 787-2129
Secure Fax No.: (603) 427-1888

June 4, 2022

Diantha Triplet
6474 COLQUITT ROAD
KEITHVILLE, LA 71047

RE: Deceased: William Triplet
Policyholder: Christus Health
Policy #: SA3-890-460617-01
Claim #: 12357332

Dear Diantha Triplet:

We have completed an initial review of the above referenced claim for life insurance benefits. Unfortunately, we are unable to pay the proceeds at this time.

The policy issued to Christus Health by The Lincoln National Life Insurance Company (Lincoln) states the following:

**ACCIDENTAL DEATH AND DISMEMBERMENT EXCLUSIONS**

No benefits are payable for any loss that is contributed to or caused by:

1. war, declared or undeclared, or any act of war;
2. intentionally self-inflicted injuries, while sane or insane;
3. suicide, or suicide attempt, while sane or insane;
4. active Participation in a Riot;
5. committing or attempting to commit a felony or misdemeanor;
6. disease, bodily or mental illness (or medical or surgical treatment thereof);
7. infections, except septic infections of and through a visible wound;
8. controlled substances (as defined in Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970 and all amendments) that are voluntarily taken, ingested or injected, unless as prescribed or administered by a Physician;
9. serving full-time active duty in the Armed Forces of any country or international authority;
10. boarding, leaving or being in or on any kind of aircraft. However, this exclusion will not apply if the Covered Person is a fare paying passenger on a commercial aircraft or traveling as a passenger in any aircraft that is owned or leased by or on behalf of the Sponsor; or
11. the presence of alcohol in the Covered Person's blood which raises a presumption that the



Exhibit B

Covered Person was under the influence of alcohol and contributed to the cause of the accident. The blood alcohol level is governed by the jurisdiction of the state in which the accident occurred.

No benefit will be payable for any loss suffered as a result of Accidental Injury during any period of incarceration.

With respect to this provision, "**Participation**" shall include promoting, inciting, conspiring to promote or incite, aiding, abetting, and all forms of taking part in, but shall not include actions taken in defense of public or private property, or actions taken in defense of the Covered Person, if such actions of defense are not taken against persons seeking to maintain or restore law and order including, but not limited to police officers and fire fighters.

With respect to this provision, "**Riot**" shall include all forms of public violence, disorder or disturbance of the public peace, by three or more persons assembled together, whether or not acting with a common intent and whether or not damage to persons or property or unlawful act or acts is the intent or the consequence of such disorder.

The Christus Health Group Life Insurance Policy also indicates to receive Accidental Death benefits, the Covered Person must suffer a loss solely as the result of an accidental injury; "***Benefits** Accidental Death and Dismemberment benefits are payable when a Covered Person suffers a loss solely as the result of accidental Injury that occurs while covered. The loss must occur within 365 days after the date of the accident.*"

Based on the above exclusions and the review of William Triplet's records it has been determined the Accidental Death benefit is not payable. The Certificate of Death indicates cerebrovascular accident, motor vehicle accident as the cause of death.

The Arkansas Motor Vehicle Crash Report indicates Mr. Triplet (V1) was traveling east on Interstate 30, in the number 1 lane. Mr. Triplet struck the guardrail end, outside shoulder, with its passenger side door area. The collision caused Mr. Triplet's vehicle to spin clockwise and enter into lane 2, while still spinning. The vehicle behind Mr. Triplet (V2) was unable to avoid Mr. Triplet's vehicle and struck the passenger side front bumper (V1) with the passenger side front bumper of V2. Mr. Triplet's vehicle continued to roll backwards after the initial collision before coming to rest in the number 3 lane, facing the wrong direction. Mr. Triplet was found to be unconscious and was transported by Metro EMS Ambulance to UAMS Medical Center.

This claim was reviewed by a Board Certified Physician, specializing in Internal Medicine and Preventive Medicine by the American Board of Internal Medicine. The Physician concluded:

- William Triplet died on 1/5/22 of complications of bleeding into the brain after a motor vehicle collision on 1/1/22.
- Mr. Triplet had a history of coronary artery disease for which he had undergone coronary artery bypass graft surgery, history of stroke, type II diabetes, hypertension and elevated cholesterol.
- At the time of the accident Mr. Triplet was taking aspirin and clopidogrel (tradename Plavix), medications that inhibit clotting of blood, to reduce his risk for myocardial infarction given his known coronary artery disease and stroke (heart attack) given his

history of stroke.

- Treatment with aspirin and clopidogrel caused severe bleeding into the brain after the motor vehicle accident contributing to the death.

Therefore, the Accidental Death benefit is not payable under exclusion #6 as the underlying medical condition requiring treatment of aspirin and clopidogrel were contributing factors to the death. Therefore, the accident was not the sole reason of the death and the claim for Accidental Death benefit is being denied.

You or your authorized representative may request a review of your denied claim. Such request must be made in writing and submitted to us at the address below within 60 days after you receive this denial notice.

The Lincoln National Life Insurance Company
Disability & Life Claims
Attn: Crystal Conley
P.O. Box 2578
Omaha NE 68172-9688

Please include your reason(s) for appealing and provide any proof, including pertinent medical information, to support your appeal. We will then provide you with a full written explanation of the decision within 60 days of receipt of your appeal.

The written request for review must be sent within 60 days of the receipt of this letter and state the reasons why you feel this claim should not have been denied. If Lincoln does not receive your written request within 60 days of your receipt of this notice, our claim decision will be final, this file will remain closed, and no further review of this claim will be conducted. In your request for review, include any additional medical documentation that you feel will support this claim. You may request to receive, free of charge, copies of all documents relevant to this claim.

Please be sure to include your policy number and claim number. If you wish, you may also submit your comments and views of the issues in writing and may request copies of the pertinent documents.

If your plan is subject to ERISA, you and your plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U. S. Department of Labor Office and your State insurance regulatory agency. In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under applicable law.

If you have any questions regarding this matter, please contact me.

Sincerely,

Crystal Conley
Life Technical Claims Specialist

**FW: Life & Accidental Death & Dismemberment Insurance**

Scott, Teressa <teressa.scott@christushealth.org>
Wed 6/22/2022 1:11 PM

To: Triplet, Diantha <ddtriple@christushealth.org>

Just received an update! The Corporate Team communicated they've spoken with you and you've pulled the policy from the portal. Is any other information needed?

---

**From:** Scott, Teressa <>
**Sent:** Wednesday, June 22, 2022 1:10 PM
**To:** Triplet, Diantha <ddtriple@christushealth.org>
**Subject:** Life & Accidental Death & Dismemberment Insurance

I spoke with the Specialist who works closely with Lincoln. She advised that you open a ticket through Health and Welfare.




Teressa L. Scott
Business Partner, HR-Strategy
CHRISTUS Shreveport-Bossier Health System
708 N. Ashley Ridge Loop, Suite 200 | Shreveport | LA 71106
(O) 318.681.4683
teressa.scott@christushealth.org
CHRISTUS Health.

Exhibit C

# NOTICE OF CHANGE

In The Certificate Booklet
Issued to Employees of:

**CHRISTUS Health**

This Notice is a summary of changes that have been made to your Booklet. These changes are effective on March 1, 2018. Keep this Notice with your Booklet.

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON

Nancy Goodwin

Exhibit D

# AMENDMENT

to be attached to and made a part of
the Certificate for Group Plan No. SA3-890-460617-01
issued by

**LIBERTY LIFE ASSURANCE COMPANY OF BOSTON**
(Liberty)

to

**CHRISTUS Health**
(Sponsor)

Effective date of this Amendment: March 1, 2018

The attached pages reflect the following revisions: Removed Employee Basic and Optional plans for Class 5 and 6

**CHRISTUS Health**
**July 1, 2013**

**DISCLAIMER**

**Sponsor:** **CHRISTUS Health**

**Policy Number(s):** **SA3-890-460617-01**

**Date Provided:** **January 18, 2018**

The following certificate(s) are a true copy of the certificate(s) issued under the policy(ies).

**LIBERTY LIFE ASSURANCE COMPANY OF BOSTON**

# CHRISTUS Health

# CERTIFICATE OF COVERAGE

Liberty Life Assurance Company of Boston welcomes your employer as a client.

**Sponsor:** **CHRISTUS Health**

**Policy Number:** **SA3-890-460617-01**

**Effective Date:** **July 1, 2013**

When this plan refers to "you" or "your" it means the Employee insured under this plan. This is your Life Insurance certificate of coverage as long as you are eligible for insurance and remain insured.

A few words about this certificate of coverage...

It is written in plain English. A few terms and provisions are written as required by insurance law. **PLEASE READ IT CAREFULLY.** If you have questions about any terms and provisions, please contact the Insurance Administrator at your work location or write to Liberty. Liberty will assist you in any way we can to help you understand your benefits.

Also, if the terms of your certificate of coverage and the policy differ, the policy will govern. Your coverage may be terminated or modified in whole or in part under the terms and provisions of the policy.

Life insurance benefits will be reduced if an acceleration-of-life-insurance benefit is paid. Receipt of acceleration-of-life-insurance benefits may affect you, your spouse or your family's eligibility for public assistance programs such as medical assistance (Medicaid), Aid to Families with Dependent Children (AFDC), supplementary social security income (SSI), and drug assistance programs. You are advised to consult with a qualified tax advisor and with social service agencies concerning how receipt of such a payment will affect you, your spouse and your family's eligibility for public assistance. In addition, the receipt of an Accelerated Death Benefit may or may not qualify for favorable tax treatment under the Internal Revenue Code of 1986. Whether such benefits qualify depends on factors such as your life expectancy at the time benefits are accelerated or whether you use the benefits to pay for necessary long-term care expenses, such as nursing home care. If the Accelerated Benefit qualifies for favorable tax treatment, the benefits will be excludable from your income and not subject to federal taxation. Tax laws relating to the Accelerated Benefit are complex. You are advised to consult with a qualified tax advisor about circumstances under which you could receive the Accelerated Benefit.

Nancy Goodwin

**Senior Vice President, Liberty Mutual Benefits**

## TABLE OF CONTENTS


SECTION 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SCHEDULE OF BENEFITS

SECTION 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . DEFINITIONS

SECTION 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ELIGIBILITY AND EFFECTIVE DATES

SECTION 4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . INSURANCE BENEFITS

SECTION 5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . EXCLUSIONS

SECTION 6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TERMINATION PROVISIONS

SECTION 7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . GENERAL PROVISIONS

# SECTION 1 - SCHEDULE OF BENEFITS

## ELIGIBILITY REQUIREMENTS FOR INSURANCE BENEFITS

**What is the Minimum Hourly Requirement?**

Employees working a minimum of 30 regularly scheduled hours per week

**What is the Classification of Covered Employees?**

| | |
|---|---|
| Class 5 | CEO |
| Class 6 | All Executives, except the CEO |

**Note:** Temporary and seasonal Employees and Employees who are not United States citizens or legal residents working in the United States are not covered under this policy.

**What is the Eligibility Waiting Period?**

1. If you are employed by the Sponsor on the plan effective date -
   First day of the pay period coincident with or next following 45 days of continuous, Active Employment

2. If you begin employment for the Sponsor after the plan effective date -
   First day of the pay period coincident with or next following 45 days of continuous, Active Employment

**Are Employee Contributions Required?**

| | |
|---|---|
| Employee Basic Life Insurance Benefits: | No |
| Dependent Optional Life Insurance Benefits: | Yes |
| Dependent Optional Accidental Death and Dismemberment Insurance Benefits: | Yes |

## SECTION 1 - SCHEDULE OF BENEFITS
(Continued)

**LIFE INSURANCE**

**What is the Amount of Insurance Benefit?**

**Employee Basic Life Insurance**

N / A

**Dependent Optional Life Insurance:**

Optional Dependent Spouse and Child coverage may be elected without electing Employee Optional Life Insurance.

**SPOUSE**

Spouse:

An amount in increments of $25,000.00. This amount may not exceed $250,000.00.

**CHILD**
Children (Age at Death):

Live birth, but under 26 years.

$10,000.00

## SECTION 1 - SCHEDULE OF BENEFITS
(Continued)

### ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

**What is the Full Amount of Insurance Benefit?**

**Dependent Optional Accidental Death and Dismemberment Insurance:**

There are three Dependent Accidental Death and Dismemberment options available: Spouse only, Spouse and Children, Children only.

**SPOUSE**
Spouse:

Without Children: An amount equal to 65.00% of the Covered Employee's elected amount.

With Children: An amount equal to 55.00% of the Covered Employee's elected amount.

**CHILD**
Children (Age at Death):

Live birth, but under 26 years.

Without Spouse: An amount equal to 20.00% of the Covered Employee's elected amount.

With Spouse: An amount equal to 15.00% of the Covered Employee's elected amount.

## SECTION 1 - SCHEDULE OF BENEFITS
(Continued)

**What are the Evidence of Insurability Requirements?**

**Non-Medical Maximum:**

| | |
|---|---|
| Dependent Spouse Optional Life Insurance Benefits: | $50,000.00 |

Any amounts of insurance in excess of the amount shown above that are due solely to salary increases are not subject to Evidence of Insurability.

## SECTION 2 - DEFINITIONS

In this section Liberty defines some basic terms needed to understand this plan. The male pronoun whenever used in this policy includes the female.

**"Active Employment"** means you must be actively at work for the Sponsor:

1. on a full-time basis and paid regular earnings;
2. for at least the minimum number of hours shown in the Schedule of Benefits; and either perform such work:
   a. at the Sponsor's usual place of business; or
   b. at a location to which the Sponsor's business requires you to travel.

You will be considered actively at work if you were actually at work on the day immediately preceding:

1. a weekend (except where one or both of these days are scheduled work days);
2. holidays (except when the holiday is a scheduled work day);
3. paid vacations;
4. any non-scheduled work day;
5. an excused leave of absence (except medical leave for your own disabling condition and lay-off); and
6. an emergency leave of absence (except emergency medical leave for your own disabling condition).

**"Administrative Office"** means Liberty Life Assurance Company of Boston, 9 Riverside Road, Weston, MA 02493.

**"Annual Enrollment Period"** or **"Enrollment Period"** means the period before each policy anniversary so designated by the Sponsor and Liberty during which you may enroll for coverage under this policy.

## SECTION 2 - DEFINITIONS
(Continued)

**"Confined"** means confinement in a hospital, skilled nursing facility or rehabilitation facility.

**"Covered Dependent"** means a Dependent whose coverage is in effect. It does not include a Dependent whose coverage has ended.

**"Covered Employee"** means a person in Active Employment insured under this policy.

**"Covered Person"** means an Employee in Active Employment or a Dependent insured under this policy.

**"Dependent"** means:

1. your lawful spouse, including a legally separated spouse and
2. your unmarried children, who meet the age requirements shown in the Schedule of Benefits.

Children include your own natural offspring, lawfully adopted children, and full-time students as defined by the school being attended. A child will be considered adopted on the date of placement in your home.

They also include stepchildren who are dependent on you for support and maintenance and living with you in a regular parent-child relationship.

They also include children who, on and after the date on which insurance would otherwise end because of the children's age, are Continuously Disabled.

With respect to this provision, **"Continuously Disabled"** means a child who is incapable of self-sustaining employment because of mental or physical disabilities and is chiefly dependent on you for support and maintenance, or institutionalized because of mental or physical disabilities.

Dependent does not include a person who is an eligible Employee or a member of the armed forces.

## SECTION 2 - DEFINITIONS
(Continued)

**"Eligibility Date"** means the date you become eligible for insurance under this plan. Eligibility Requirements are shown in the Schedule of Benefits.

**"Eligibility Waiting Period"** means the continuous length of time you must be in Active Employment in an eligible class to reach your Eligibility Date.

**"Employee"** means a person in Active Employment with the Sponsor.

**"Enrollment Form"** is the document completed by you, if required, when enrolling for coverage. This form must be satisfactory to Liberty.

**"Evidence of Insurability"** means a statement of proof of the Covered Person's medical history upon which acceptance for insurance will be determined by Liberty.

## SECTION 2 - DEFINITIONS
(Continued)

**"Family and Medical Leave"** means a leave of absence for the birth, adoption or foster care of a child, or for the care of your child, spouse or parent or for your own serious health condition as those terms are defined by the Federal Family and Medical Leave Act of 1993 (FMLA) and any amendments, or by applicable state law.

## SECTION 2 - DEFINITIONS
(Continued)

**"Initial Enrollment Period"** means one of the following periods during which you may first enroll for coverage under this policy:

1. if you are eligible for insurance on the plan effective date, a period before the plan effective date set by the Sponsor and Liberty.

2. if you become eligible for insurance after the plan effective date, the period which ends 31 days after your Eligibility Date.

**"Injury"** means bodily impairment resulting directly from an accident and independently of all other causes.

**"Non-Medical Maximum"** means an amount of insurance on a Covered Person which is not subject to Evidence of Insurability. The Non-Medical Maximum amounts are shown in the Schedule of Benefits. Any amounts of insurance in excess of the Non-Medical Maximums are subject to Evidence of Insurability. Evidence of Insurability will be at your expense.

**"Physician"** means a person who:

1. is licensed to practice medicine and is practicing within the terms of his license; or

2. is a licensed practitioner of the healing arts in a category specifically favored under the health insurance laws of the state where the treatment is received and is practicing within the terms of his license.

It does not include you, any family member or domestic partner.

## SECTION 2 - DEFINITIONS
(Continued)

**"Proof"** means the evidence in support of a claim for benefits and includes, but is not limited to, the following:

1. a claim form completed and signed (or otherwise formally submitted) by you or your beneficiary claiming benefits;
2. an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and
3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits;
4. a certified copy of a death certificate.

Proof must be submitted in a form or format satisfactory to Liberty.

**"Schedule of Benefits"** means the section of this plan which shows, among other things, the Eligibility Requirements, Eligibility Waiting Period, and Amount of Insurance Benefit.

**"Sickness"** means disease or illness including related conditions and recurrent symptoms of the sickness. Sickness also includes pregnancy.

**"Sponsor"** means the entity to whom this plan is issued.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES

**What are the Eligibility Requirements for Employee and Dependent Insurance Benefits?**

The eligibility requirements for insurance benefits are shown in the Schedule of Benefits.

**What is your Eligibility Date for Insurance Benefits?**

**Employee Coverage:**

If you are in an eligible class you will qualify for insurance on the later of:

1. this plan's effective date; or
2. the day after you complete the Eligibility Waiting Period shown in the Schedule of Benefits.

**Dependent Coverage:**

If you are eligible for Employee coverage you will be eligible for Dependent coverage on the later of:

1. the date you are eligible for Employee coverage if on that date you have a Dependent; or
2. the date you acquire a Dependent if on that date you are eligible for Employee coverage.

If both parents are Employees, only one will be eligible for Dependent coverage with respect to their Dependent children.

**Applicable to Dependent Optional Life Insurance Class 5, 6:**

**What Happens During the Annual Enrollment Period?**

During each Annual Enrollment Period, you may keep your coverage at the same level or make any one of the following changes in coverage for the next plan year, subject to any Evidence of Insurability Requirements as shown in the Schedule of Benefits:

1. decrease your coverage;
2. increase your coverage including enrolling for the first time.

**Applicable to Dependent Optional Life Insurance Class 5, 6:**

If you fail to enroll for a change in your coverage option during any Annual Enrollment Period you will continue to be insured for the same coverage option during the next plan year, unless you experience a Family Status Change.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

**Applicable to Optional Dependent Life Class 5, 6, Optional Dependent Accidental Death and Dismemberment Class 5, 6:**

**What Happens when you Experience a Family Status Change?**

When you experience a Family Status Change, you may keep your coverage at the same level or make any one of the following changes in coverage, subject to any Evidence of Insurability Requirements as shown in the Schedule of Benefits:

1. decrease your coverage;

2. increase your coverage including enrolling for the first time.

You must apply for the change in coverage within 30 days of the date of the Family Status Change. Such changes in coverage must be due to or consistent with the reason that the change in coverage was permitted. A change in coverage is consistent with a Family Status Change only if it is necessary or appropriate as the result of the Family Status Change.

**What is Your Effective Date for Insurance?**

Insurance will be effective at 12:01 A.M. Standard Time in the governing jurisdiction on the day determined as follows, but only if your application or enrollment for insurance is made with Liberty through the Sponsor in a form or format satisfactory to Liberty.

**Employee Coverage:**

1. For non-contributory coverage not subject to Evidence of Insurability, you will be insured on your Eligibility Date.

2. For non-contributory coverage subject to Evidence of Insurability, you will be insured on the later of the date Liberty gives approval or your Eligibility Date.

Evidence of Insurability will be at your Expense.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

**What is Your Effective Date of Insurance?** (Continued)

**Dependent Coverage:**

1. For contributory coverage not subject to Evidence of Insurability, your Dependent will be insured on the later of the date you make application or your Eligibility Date, provided you make application no later than 31 days after your Eligibility Date.

2. For contributory coverage subject to Evidence of Insurability, your Dependent will be insured on the later of the date Liberty gives approval or your Eligibility Date, provided you make application no later than 31 days after your Eligibility Date.

Evidence of Insurability will be at your Expense.

**Increases or Decreases:**

Any increase in or addition to coverage will take effect on the date of the change.

Any decrease in or deletion of coverage will take effect on the date of the change.

Any such change applies to loss of life or accidental Injury that occurs on or after the effective date of the change.

**When will Your Effective Date for Employee Insurance be Delayed?**

The effective date of any initial, increased or additional insurance will be delayed for an individual if you are not in Active Employment because of Injury or Sickness. The initial, increased or additional insurance will begin on the date the individual returns to Active Employment.

**When will Your Effective Date for Dependent Insurance be Delayed?**

If a Covered Dependent is Confined on the date the increase or addition is to take effect, it will take effect when the confinement ends.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

**What Happens to Your Coverage During a Family and Medical Leave?**

Your coverage may be continued under this plan for an approved family or medical leave of absence for up to 12 weeks following the date coverage would have terminated, subject to the following:

1. the authorized leave is in writing;
2. the required premium is paid;
3. your benefit level, or the amount of earnings upon which your benefit may be based, will be that in effect on the date before said leave begins; and
4. continuation of coverage will cease immediately if any one of the following events should occur:
   a. you return to work;
   b. this plan terminates;
   c. you are no longer in an eligible class;
   d. nonpayment of premium when due by the Sponsor or you;
   e. your employment terminates.

# SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

## What Happens During a Labor Dispute?

### ELIGIBILITY

A Covered Employee whose coverage under this policy ends because he stops active work as a result of a labor dispute may have the right to have continued coverage. To continue coverage, the required premium must be paid to the Sponsor when due.

To qualify for continued coverage, a Covered Employee must have been covered by this policy on the date of cessation of work.

If any premium was due prior to the date of cessation of work and is unpaid at the date of cessation of work, continuation may be contingent upon payment of such premium.

### PAYMENT FOR CONTINUED COVERAGE

The Covered Employee must pay his individual contribution of premium and any contribution due from the employer for the period of cessation of work. The premium will be 100% of the total employer and employee cost of providing the same benefits if the cessation of work had not occurred. The individual premium rate may be increased up to an additional 20%, or a higher percent if approved by the Commissioner of Insurance of Texas.

### BENEFITS UNDER CONTINUED COVERAGE

This continued coverage will at all times provide the same benefits as would have been afforded to the Covered Employee the work cessation not occurred. This includes any changes in the coverage under this policy as may become effective while continued coverage is in effect.

### TERMINATION OF CONTINUED COVERAGE

A Covered Employee's continued coverage under this provision will end at the earliest of these dates:

- the date which ends the "maximum period" as defined below;
- the date ending the last period for which the covered person has made any required payment for continued coverage on a timely basis;
- the date work cessation ends;
- the date on which the number of persons for which premium is paid is less than 75% of those eligible to continue coverage;
- the date a Covered Employee takes full-time employment with another employer.

The "maximum period" referred to above will start with the first day of the period of work cessation and will end with the date 6 months after the work cessation began.

# SECTION 4 - INSURANCE BENEFITS

## EMPLOYEE LIFE INSURANCE

**Benefits**

**When is Your Life Insurance Benefit Payable?**

When Liberty receives satisfactory Proof of your death, Liberty will pay the proceeds of the Life Insurance in force on your life under this plan. The benefit payable is shown in the Schedule of Benefits.

**Conversion Privilege**

**What is the Conversion Privilege?**

**Conversion Privilege at Individual Termination or Reduction of Benefits:**

If all or part of your coverage ends, you may convert the amount that ends to an individual Life Insurance policy. Conversion is subject to the following conditions:

1. within 31 days after coverage ends or is reduced, you must make written application to Liberty and pay the first premium payment.

2. the individual policy will be issued without Evidence of Insurability. It will contain Life Insurance benefits only. The policy will be one then being offered by Liberty. The premium due will be based on the premium schedule of Liberty's conversion policy that applies to your class of risk and age at the birthday nearest to the effective date of the individual policy.

The individual policy will be effective 31 days after your group coverage ends.

**Conversion Privilege at Class or Plan Termination:**

If coverage ends for all employees or for your class, you are entitled to a limited conversion privilege. You must have been covered for at least 5 years. You must apply for the individual policy in the same manner as described above. The amount you may convert is limited to the lesser of:

1. the amount you were covered for on the date the group coverage terminated less any group insurance you become eligible for within 31 days; or

2. $2,000.

The individual policy will be effective 31 days after your group coverage ends.

**Death Within the 31 Days Allowed for Conversion:**

If you die within the 31 days allowed for conversion, Liberty will pay to your beneficiary the amount you were eligible to convert. Such insurance will be paid as a claim under this policy. Any premiums paid for a converted policy will be refunded.

## SECTION 4 - INSURANCE BENEFITS
(Continued)

**DEPENDENT LIFE INSURANCE**

**Benefits**

**When is Your Dependent Life Insurance Benefit Payable?**

When Liberty receives satisfactory Proof of your Covered Dependent's death, Liberty will pay to you the amount in force on such Dependent's life under this plan. The Dependent Life Insurance benefit will be paid in one sum. It is shown in the Schedule of Benefits.

**Conversion Privilege**

**What is the Conversion Privilege?**

**Conversion Privilege at Individual Termination or Reduction of Benefits:**

If a Covered Dependent's coverage ends because:

1. of your death; or
2. your employment in an eligible class for Dependent Life Insurance ends,

your Covered Dependent spouse may convert Dependent Life Insurance to an individual policy. Within 31 days after coverage ends, your Covered Dependent spouse must make written application to Liberty and pay the first premium payment. The individual policy will contain Life Insurance benefits only. The policy will be one then being offered by Liberty. Evidence of Insurability will not be required.

**Conversion Privilege at Class or Policy Termination:**

If your Covered Dependent's coverage ends because:

1. coverage ends for all employees; or
2. coverage ends for all employees in your eligible class,

your Covered Dependent spouse is entitled to a limited conversion privilege. You must be entitled to convert to an individual policy in order for your Covered Dependent spouse to have this limited privilege. Conversion must be applied for in the same way as stated above. The amount your Covered Dependent spouse may convert is limited to the lesser of:

1. the amount your Covered Dependent spouse was covered for on the date coverage ended less any group insurance you become eligible for within 31 days; or
2. $2,000.

The individual policy will become effective 31 days after your Covered Dependent spouse's coverage ends.

**Death Within the 31 Days Allowed for Conversion:**

Dependent Life Insurance is payable if your Covered Dependent spouse dies during this period. The amount payable is the amount your Covered Dependent spouse was entitled to convert. Such insurance will be paid under this plan. Any premium paid for an individual plan will be refunded.

## SECTION 5 - EXCLUSIONS

**LIFE INSURANCE EXCLUSIONS**

No benefits are payable for any loss for death that results from, is contributed to or caused by:

1. suicide, committed while sane or insane, occurring within 24 months after the Covered Person's initial effective date of insurance with the Sponsor; and

2. suicide, committed while sane or insane, occurring within 24 months after the date any additional insurance elected by the Covered Person becomes effective under this Plan.

The suicide exclusion will apply to any amounts of insurance for which the Covered Person pays all or part of the premium.

The suicide exclusion will also apply to any amount that is subject to Evidence of Insurability Liberty approved.

## SECTION 6 - TERMINATION PROVISIONS

**Termination of a Covered Person's Insurance**

A Covered Person will cease to be insured on the earliest of the following dates:

1. the date this policy terminates, but without prejudice to any claim originating prior to the time of termination;
2. the date you are no longer in an eligible class;
3. the date your class is no longer included for insurance;
4. the last day for which any required Employee contribution has been made;
5. the date employment (status as an active Employee) or eligibility ends for any reason; or
6. the date you cease to be in Active Employment due to a labor dispute, including any strike, work slowdown, or lockout.

Liberty reserves the right to review and terminate all classes insured under this policy if any class(es) cease(s) to be covered.

## SECTION 7 - GENERAL PROVISIONS

**What is the Appeal Process?**

Liberty will notify in writing any Covered Person or beneficiary whose claim is denied in whole or part. That written notice will explain the reasons for denial. If the claimant does not agree with the reasons given, he may request an appeal of the claim. To do so, the claimant should write to Liberty within 60 days after the notice of denial was received. The claimant should state why he believes the claim was improperly denied. Any data, questions or comments that the claimant thinks are appropriate should be included. Unless Liberty requests additional material in a timely fashion, the claimant will be advised of Liberty's decision within 60 days after the letter is received.

**Is Assignment Allowed?**

The coverage under this plan is not assignable by the Sponsor without Liberty's written consent. You may assign all of your present and future right, title, interest, and incidents of ownership of:

1. any Life Insurance;
2. any disability provision of Life Insurance; and
3. any Accidental Death and Dismemberment Insurance under this policy.

Such assignment will include, but is not limited to, the rights:

1. to make any contribution required to keep the coverage in force;
2. to exercise any conversion privilege; and
3. to change the beneficiary.

**Why Must You Name a Beneficiary?**

You must name a beneficiary to whom the insurance benefits under this policy are payable. If more than one beneficiary is named and if their interests are not specified, any surviving Beneficiaries will share equally. For any Dependent Life Insurance, you are automatically designated as the beneficiary.

If, at the time of your death, there is no named or surviving beneficiary, Liberty will pay the benefits to the executor or administrator of your estate. Liberty may, at its option, pay the benefits to a surviving relative in the following order: spouse, child, parent, sibling. Such payment will release Liberty of all further liability to the extent of payment.

You may change your beneficiary at any time by written request. Liberty or the Sponsor will provide a form for that purpose. Any change of beneficiary will take effect when the Sponsor receives the written request whether or not you are alive at that time. Such change will relate back to the date of the request. Any change of beneficiary will not apply to any payment made before the request was received by the Sponsor.

**How will Liberty Conform with State Statutes?**

Any provision of this policy which, on its effective date, is in conflict with the statutes of the governing jurisdiction of this policy is hereby amended to conform to the minimum requirements of such statute.

## SECTION 7 - GENERAL PROVISIONS
(Continued)

**What are Liberty's Examination Rights?**

Liberty, at its own expense, has the right and opportunity to have a Covered Person, whose Injury or Sickness is the basis of a claim, examined or evaluated at reasonable intervals deemed necessary by Liberty. This right may be used as often as reasonably required. Liberty may also require an autopsy unless prohibited by law.

**Who are Claims Paid To?**

If a beneficiary or Covered Person is a minor or is physically or mentally incapable of giving a valid release for payment, Liberty, at its option, may make payment not to exceed $2,000.00 to a party who appears to have assumed responsibility for the care and support of such person. Liberty will only make such payment until claim is made by a guardian of the estate of the beneficiary or the Covered Person. Such payment will release Liberty of all further liability to the extent of payment.

**When May This Plan be Contested?**

This plan will not be contested, except for nonpayment of premium, after it has been in force for two years from the date of issue. The coverage of any Covered Person shall not be contested, except for nonpayment of premium, on the basis of a statement made relating to insurability of the Covered Person after such coverage has been in force for two years during the Covered Person's lifetime.

In the absence of fraud, any statements in any application will be deemed representations and not warranties. No representation made by:

1. the Sponsor in applying for this plan will make it void unless the representation is contained in the Sponsor's signed application; or

2. any Covered Person in enrolling for insurance under this plan will be used to reduce or deny a claim unless the representation is contained in an application signed by him and such application is given to him or his beneficiary.

**Who has the Authority for Interpretation of this Plan?**

Liberty shall possess the authority, in its sole discretion, to construe the terms of this plan and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this plan and benefit eligibility shall be conclusive and binding.

**When can Legal Proceedings Begin?**

A claimant or the claimant's authorized representative cannot start any legal action:

1. until 60 days after Proof of claim has been given; or

2. more than one year after the time Proof of claim is required.

Legal actions are contingent upon first having followed the Claims and Appeals procedure outlined in this plan.

## SECTION 7 - GENERAL PROVISIONS
(Continued)

**What Happens if Your Age is Misstated?**

If a Covered Person's age has been misstated, an equitable adjustment will be made in the premium. If the amount of the benefit is dependent upon the Covered Person's age, the amount of the benefit will be the amount the Covered Person would have been entitled to if his correct age were known.

A refund of premium will not be made for a period more than 12 months before the date Liberty is advised of the error.

**When Must Liberty be Notified of a Claim?**

a. Notice of claim must be given to Liberty within 30 days of the date of the loss on which the claim is based. If that is not possible, Liberty must be notified as soon as it is reasonably possible to do so. Such notice of claim must be received in a form or format satisfactory to Liberty.

b. When written notice of claim is applicable and has been received by Liberty, the Covered Person will be sent claim forms. If the forms are not received within 15 days after written notice of claim is sent, the Covered Person can send to Liberty written Proof of claim without waiting for the forms.

**When Must Liberty Receive Proof of Claim?**

a. Satisfactory Proof of loss must be given to Liberty no later than 30 days after the date of loss.

b. Failure to furnish such Proof within such time shall not invalidate or reduce any claim if it was not reasonably possible to furnish such Proof within such time. Such Proof must be furnished as soon as reasonably possible, and in no event, except in the absence of legal capacity of the claimant, later than one year from the time Proof is otherwise required.

Liberty reserves the right to determine if the Covered Person's Proof of loss is satisfactory.

**What are the Optional Methods of Settlement?**

Benefits are usually payable in one sum. However, the Covered Person may elect in writing to have the proceeds paid through an installment program offered by Liberty. If the Covered Person makes no such election, his beneficiary may do so at the Covered Person's death.

Any installments remaining after the death of the payee will be paid as directed in the election of this option. Such direction is subject to the approval of Liberty.

**What is the Liberty Security Account?**

If the benefits to be paid total more than $10,000, a beneficiary may elect to have the proceeds deposited into a Liberty Security Account. The Liberty Security Account is an interest-bearing checking account, that is fully guaranteed by Liberty, and the beneficiary may draw on the entire sum of the proceeds at any time. If the Liberty Security Account is not elected, benefits may be paid in one sum.

## SECTION 7 - GENERAL PROVISIONS
(Continued)

**What are Liberty's Rights of Recovery?**

Liberty has the right to recover any overpayment of benefits caused by, but not limited to, the following:

1. fraud;
2. any error made by Liberty in processing a claim; or
3. any error made in the eligibility or administration of this plan by the Sponsor.

Liberty may recover an overpayment by, but not limited to, the following:

1. requesting a lump sum payment of the overpaid amount;
2. reducing any benefits payable under this plan; or
3. taking any appropriate collection activity available including any legal action needed.

It is required that full reimbursement be made to Liberty.

**How does the Plan Affect Workers' Compensation?**

This Plan and the coverages provided are not in lieu of, nor will they affect any requirements for coverage under any Workers' Compensation Law or other similar law.

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-0401

0002011 LFPT7GD1 00007812

September 23, 2022

Diantha Triplet
6474 COLQUITT ROAD
KEITHVILLE, LA 71047

RE: Deceased: William Triplet
Policyholder: CHRISTUS Health
Policy #: SA3-890-460617-01
Claim #: 12357332

Dear Diantha Triplet:

We have completed the appeal review of the above-referenced claim for Accidental Death benefits under Group Life Insurance Policy No. SA3-890-460617-01 (hereinafter "Policy") issued by The Lincoln National Life Insurance Company (hereinafter "Lincoln") to Christus Health. We have determined that the denial of benefits will be maintained.

**Initial Claim Decision**

Accidental Death benefits were denied on the basis that William Triplet's death was contributed to or caused by a disease, bodily or mental illness. The basis for the decision was outlined in a letter dated June 4, 2022. You were provided an opportunity to request an appeal review of the denial by submitting a written request stating the reasons why the claim should not have been denied and submitting additional information to support the claim. The letter indicated: " *Please include your reason(s) for appealing and provide any proof, including pertinent medical information, to support your appeal. The written request for review must be sent within 60 days of the receipt of this letter and state the reasons why you feel this claim should not have been denied. If Lincoln does not receive your written request within 60 days of your receipt of this notice, our claim decision will be final, this file will remain closed, and no further review of this claim will be conducted. In your request for review, include any additional medical documentation that you feel will support this claim. You may request to receive, free of charge, copies of all documents relevant to this claim* ."

**Appeal**

We received your appeal on July 21, 2022, with a copy of the July 1, 2013 Christus Health Group Life Booklet (and 2018 amendment). In your letter, you requested a review of the denial of benefits.

You noted you had provided necessary proof for coverage and reported the Policy you had access to (through your employer) did not include taking medications as an exclusion.

Exhibit E

**Appeal Evaluation**

To ensure a full and fair review on appeal, we have reviewed the information in the file in its entirety and have considered all information, facts and circumstances pertaining to this claim. Based on the policy exclusions and the review of William Triplet's records it was been determined the Accidental Death benefit is not payable.

Medical Information Available for the review:

- Crash Report dated January 1, 2022
- Ambulance Report dated January 1, 2022
- Medical Notes with Imaging from the University of Arkansas for Medical Sciences dated
- January 1, 2022- January 4, 2022.
- Operative Note by William Coggins, MD dated January 1, 2022
- Death Certificate – dated April 20, 2022
- Response by Randy Maddox, MD dated May 3, 2022

The Certificate of Death indicates the date pronounced dead: January 5, 2022. Cause of Death: Cerebrovascular accident and motor vehicle accident. Conditions contributing to death: Interventricular hemorrhage and motor vehicle accident January 1, 2022, hypertension, coronary artery disease, diabetes, closed head injury, blunt chest trauma.

We confirmed the exclusion listed in the June 4, 2022 denial letter was cited from an accurate copy of the Christus Health Group Life Insurance Policy. A copy of the Policy is included with this letter for your consideration.

During the appeal evaluation, the file was reviewed by an independent consulting physician Board Certified in Internal Medicine, who concluded the following:

> *William Triplet died on 1/5/22 of complications of bleeding into the brain after a motor vehicle collision on 1/1/22.*
>
> *Mr. Triplet had a history of coronary artery disease for which he had undergone coronary artery bypass graft surgery, history of stroke, type II diabetes, hypertension and elevated cholesterol.*
>
> *At the time of the accident Mr. Triplet was taking aspirin and clopidogrel (tradename Plavix), medications that inhibit clotting of blood, to reduce his risk for myocardial infarction given his known coronary artery disease and stroke (heart attack) given his history of stroke.*
>
> *Treatment with aspirin and clopidogrel caused severe bleeding into the brain after the motor vehicle accident contributing to the death.*

During the appeal of this claim, the file was reviewed by an additional independent consulting physician Board Certified in Internal Medicine, who concluded the following:

> *Mr. William Triplet was a 75-year-old male who died on 1/5/22 of complications of an*

*intracerebral hemorrhage after a motor vehicle accident on 1/1/22.*

*Based on the medical records provided, the claimant has a significant past medical history of hypertension, coronary artery disease s/p CABG, hyperlipidemia, diabetes mellitus type II, and a history of stroke. Within a reasonable degree of medical certainty, the claimant's prior medical condition(s) appear to have caused his death. Dr. Christopher Fowler, DO denoted on Emergency Department Visit (dated January 1, 2022) that the claimant was driving on the interstate and began to weave and then struck another vehicle. Initially, the claimant presented with a GCS of 3, and had diagnostic imaging of intraventricular hemorrhaging.*

*Death Certificate (dated April 20, 2022) issued denotes the Cause of Death as:*

1. *Cerebrovascular Accident*
2. *Motor Vehicle Accident*

*There is also denotation of conditions contributing to death, which include:*

1. *Interventricular hemorrhage*
2. *Motor Vehicle Accident (dated January 1, 2022)*
3. *Hypertension*
4. *Coronary Artery Disease*
5. *Diabetes Mellitus*
6. *Close Head Injury*
7. *Blunt Chest Trauma*

*This reviewer opines that the claimant's prior medical conditions caused the claimant's death, with the motor vehicle accident as a contributing factor to the death of the claimant.*

0000201 1 LFPT7GD1 00007813

On August 30, 2022, you indicated you would be submitting a picture of Mr. Triplet's right ear which confirmed he hit his head. This information would be considered however the denial was not based on the fact Mr. Triplet was in an accident. We acknowledge that he likely hit his head however his death was not solely caused by the head trauma.

Accidental death benefits are payable when a covered person suffers a loss ***solely*** as the result of accidental injury that occurs while covered, injury is defined as bodily impairment resulting directly from an accident and ***independently of all other causes***, and no benefits are payable for any loss *that is* ***contributed to*** or caused by disease, bodily or mental illness. It is clear from the medical evaluations that Mr. Triplet's death was caused or minimally contributed to by his medical conditions and medications.

**Conclusion**

We conducted a thorough and independent review of the entire claim. Based on the facts of the case and the terms of the Policy, we maintain that Mr. Triplet's death was caused by or, at a minimum, contributed to by disease, bodily or mental illness. Therefore, the Policy exclusion applies and no accidental death benefits are payable.

Benefits are payable when a covered employee suffers a loss solely as the result of an accidental injury that occurs while covered. The term "injury" is defined as bodily impairment resulting directly from an accident and independently of all other causes. Based on the evidence, Mr. Triplet's medical history, conditions and medications contributed to his death. Therefore, Mr. Triplet's death was not independent of all other causes and not eligible due to the following Policy exclusion: *No benefits are payable for any loss that is contributed to or caused by disease, bodily or mental illness (or medical or surgical treatment thereof).*

This claim decision reflects an evaluation of the claim facts and Policy provisions.

**The Policy**

The Christus Health Group Life Policy states, in part:

***Benefits***
*Accidental Death and Dismemberment benefits are payable when a Covered Person suffers a loss solely as the result of accidental Injury that occurs while covered:..*

***"Injury"*** *means bodily impairment resulting directly from an accident and independently of all other causes.*

***ACCIDENTAL DEATH AND DISMEMBERMENT EXCLUSIONS***
*No benefits are payable for any loss that is contributed to or caused by:*
...
*6. disease, bodily or mental illness (or medical or surgical treatment thereof)...*

At this time, your administrative right to review has been exhausted and no further review will be conducted by Liberty and your claim will remain closed. You may request to receive, free of charge, copies of all documents relevant to your claim.

Nothing in this letter should be construed as a waiver of any rights and defenses under the above captioned Plan Administrator and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Decisions made by Lincoln Financial Group are based on the provisions outlined in the Christus Health Group Life Policy. No internal rules, guidelines, protocols, standard or other similar criteria were relied upon in rendering the claim determination.

If you require language translation assistance, please contact Lincoln Financial Group to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

*Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender Sus derechos de reclamo y apelación.*
*Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.*

If you have any questions regarding this matter, please contact me.

Sincerely,

Lisa Macallister
Claim Resolution Specialist
Phone No.: (888) 437-7611 Ext. 16400
Secure Fax No.: (603) 334-0401

0002011 LFPT7GD1 00007814 E